(44 Misc. Rep. 122.)

### PEOPLE ex rel. STEIN v. CRANE, City Magistrate, et al.

(Supreme Court, Special Term, Kings County.  June 25, 1904.)

1. MAGISTRATES—JURISDICTION—COMMON PROSTITUTE—SENTENCE TO REFORMA-TORY.

New York City Charter, Consol. Act, Laws 1882, p. 366, c. 410, § 1458, gives a magistrate jurisdiction to require a common prostitute to give bond for good behavior, or to impose a small fine; and Laws 1896, p. 511, c. 546, as amended by Laws 1904, c. 453, provides that a woman convicted of being a common prostitute may be sentenced to the reformatory for women. Cr. Code, § 887, provides that a common prostitute, who has no lawful employment whereby to maintain herself, is a vagrant. *Held,* that when no charge of vagrancy is made a magistrate has no authority to sentence a woman to the reformatory on a charge of being a common prostitute.

Habeas corpus and certiorari in aid thereof on the relation of Annie Stein to secure her release from the State Reformatory. Relator discharged.

Leonard A. Snitkin, for relator.

William Travers Jerome, for respondents.

KELLY, J.  The relator is brought before the court on writs of habeas corpus and certiorari to inquire into the cause of her imprisonment in the State Reformatory at Bedford. The superintendent of the reformatory makes return that she is held under a commitment signed by a city magistrate in the borough of Manhattan, in the city of New York, and from a copy of the commitment attached to the return it appears that the magistrate certifies that on June 10, 1904, the relator was brought before him charged with having been on that day a common prostitute; that she was arraigned before him; that she pleaded not guilty to the charge; that he, the magistrate, thereupon proceeded to try her; that on the conclusion of the trial he convicted her, and adjudged her guilty of the charge made against her; and, it appearing that she was not insane, nor mentally or physically incapable of being benefited by the discipline of the State Reformatory, he thereupon sentenced her to the State Reformatory for a term not to exceed three years, with a provision that she might be sooner paroled or discharged, pursuant to the provisions of chapter 546, p. 511, Laws 1896, as amended by chapter 453, Laws 1904. No testimony or record of the proceedings which resulted in the summary conviction and sentence of the relator to imprisonment for three years is returned in obedience to the writ of certiorari directed to the magistrate. He submits a return consisting of a partially filled blank certifying that the relator was brought before him on the day stated, charged by a police officer in Manhattan with be-

ing a common prostitute. He attaches a copy of the complaint, from which it appears that the policeman made oath that at 1 o'clock in the morning of the day of conviction and sentence the relator solicited men for the purpose of prostitution, "in violation of the statute in such cases made and provided." The magistrate certifies that the relator "being called upon to answer, and being informed of her rights and of said charge, complaint and testimony, did * * *." Here follows a blank in the printed form, and the magistrate certifies that he thereupon convicted her of "being guilty of being a common prostitute, and committed her to the New York State Reformatory for women at Bedford, New York, pursuant to chapter 546 of Laws of 1896, as amended by chapter 453 of Laws of 1904."

The relator demurs to the return on the ground that the magistrate was without jurisdiction, and had no legal authority to impose upon the relator the sentence set out in the commitment, or to make the warrant of commitment. The testimony, if there was any testimony taken before the magistrate, on which he based the conviction of the relator and her sentence to three years' imprisonment, is not returned in obedience to the writ of certiorari. The learned district attorney, in his brief submitted, states that:

"It makes absolutely no difference whether the complaint before the magistrate or the testimony and proceedings before him are returned by a writ of certiorari, because the Supreme Court is powerless to review these proceedings, and, if there was no evidence or insufficient evidence to justify a conviction, the judgment will be reversed upon appeal, but summary relief cannot be obtained upon habeas corpus."

He goes on to state that in his opinion the writ of certiorari should not have been issued, "although some judges have issued both writs." These proceedings present a remarkable condition of things in the administration of criminal law. The writ of certiorari should be obeyed, irrespective of the opinion of the District Attorney as to its necessity or propriety. It cannot be that this woman is beyond the protection of the law; that she can be arrested, summarily convicted, and deprived of her liberty for three years, without evidence or record of the proceedings from which the court may see that at least the forms of law were observed. But there is, in my opinion, no justification for the action of the magistrate. The public charities law, recited in the magistrate's return, creates no new crime. The offense of being a common prostitute is defined and the penalty fixed in the city charter (Consol. Act, Laws 1882, p. 366, c. 410, § 1458). A common prostitute, who has no lawful employment whereby to maintain herself, is a vagrant, by section 887 of the Criminal Code. This relator was not convicted under either of the provisions of law cited, because under the charter provision referred to the magistrate could only require her to give bonds for her good behavior, or impose a small fine. It is not charged that she was without a lawful employment whereby to maintain herself. The procedure which has resulted in the relator's imprisonment was condemned by this Court at Special Term before Mr. Justice Gaynor. People ex rel. Frank v. Keeper of State Reformatory, 38 Misc. Rep. 233, 77 N. Y. Supp. 145; Clark v. Same, 38 Misc. Rep. 241, 77 N. Y. Supp. 151; Smith v.

Same, 38 Misc. Rep. 243, 77 N. Y. Supp. 153. The decision discharging the relator in the case just cited was affirmed by the Appellate Division in this department in People ex rel. Frank v. Davis, 80 App. Div. 448, 80 N. Y. Supp. 872, and by the Court of Appeals in People ex rel. Clark v. Keeper, 176 N. Y. 465, 68 N. E. 884. The courts have held in the cases cited that the public charities law created no new crime; that, if the offense charged was a misdemeanor, the city magistrate had no jurisdiction or authority to try it, to convict the alleged offender, or impose summarily a sentence exceeding in its severity the punishment for a misdemeanor and for certain felonies. Mr. Justice Woodward, writing for the Appellate Division in the Frank Case, said:

"We cannot believe that the Legislature, which has expressed no such intention, contemplated that persons convicted of offenses with a limited punishment attached, not amounting to a misdemeanor, should, at the discretion of a single city magistrate, be deprived of their liberty for a period of three years. This would be to deprive the relators of the right or privilege accorded to every citizen of the state to be secure in his life, liberty, and property, unless by the law of the land or the judgment of his peers. Const. art. 1, § 1."

The reformation of the unfortunate class of persons to which the relator is alleged to belong is a laudable object. It has engaged the attention of the charitable, religious, and philanthropic for all time. But it will never be accomplished by violating the rights accorded by our Constitution and laws to the most hardened criminal. That this woman can be taken on the street at 1 o'clock in the morning, charged with this offense on the oath of a police officer, and on the same day, without evidence, so far as it appears, without counsel, and without a trial, which is guarantied to all citizens accused of crime, be convicted and sentenced by a single magistrate to three years' imprisonment, is repugnant to the spirit of our law. As was said by the Appellate Division in the Frank Case:

"While it may be proper to permit city magistrates to summarily convict and punish minor offenses not amounting to misdemeanors, or in cases of a charitable or corrective nature, for persons of immature years, it can hardly be necessary to vest the power to deprive a citizen of his or her liberty for a period of three years in a city magistrate, where the statute defining the offense limits the power of punishment to a petty fine of ten dollars and the giving of a bond for good behavior."

The magistrate had no jurisdiction or authority to sentence the relator to three years' imprisonment in the State Reformatory, and I direct that she be discharged from imprisonment.